**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**JOSEPH CHESTER PARZYCK, III,**
      **Plaintiff,**

vs.                                 **Case No: 5:07cv107/RS/MD**

**DR. DANIEL CHERRY,**
      **Defendant.**

## REPORT AND RECOMMENDATION

This cause is before the court upon Defendant Cherry's Motion to Dismiss based on plaintiff's failure to exhaust administrative remedies (doc. 67) and plaintiff's response thereto. (Doc. 70).  Upon review, the court concludes that the motion should be granted.

## BACKGROUND

**Factual background**

Plaintiff, an inmate of the Florida penal system, is currently confined at Zephyrhills Correctional Institution.  Plaintiff's third amended complaint ("complaint") was filed on October 28, 2008 (doc. 56).[1]  In the current complaint, plaintiff contends that Dr. Daniel P. Cherry, the lone named defendant, provided constitutionally inadequate medical care in 2006-2008 while plaintiff was incarcerated at Apalachee Correctional Institution ("Apalachee CI").  Plaintiff indicates in the complaint that he was transferred to Apalachee CI on October 16, 2006 with pre-existing medical problems in his low back and spine for which he had

---

[1] His original complaint was filed on May 8, 2007, under the prison mailbox rule.

sought treatment at his previous institution. (Complaint ¶¶ 1-6). Plaintiff had been told, while at South Florida Reception Center that he would be referred to both orthopedic and neurological specialists. (¶ 4). On November 16, 2006 plaintiff filed an informal grievance when he still had not seen the specialists. (¶7). On December 5, 2006, he filed a formal grievance about the same issue and the grievance was approved with the notation that his chart would be referred to the A.R.N.P. to see if there is a need for an orthopedic consult. (¶8). A notation in plaintiff's medical file indicates that he was seen in the ortho clinic on October 4, 2006, and the orthopedist indicated no orthopedic problems but that plaintiff needed a psych consult. (¶9). On December 27, 2006, an A.R.N.P. determined that no orthopedic consult was necessary, and two days later plaintiff filed an appeal to the secretary. (¶¶10-11).

On January 4, 2007, a consultation form was prepared for plaintiff's chronic back pain, and he signed the form detailing his back problems on January 10. (¶¶12-13). On January 22, 2007, Dr. Cherry denied the consultation without any physical examination of the plaintiff. (¶14). Plaintiff sought medical care around once every month and a half for his condition from May 2, 2007 through January 17, 2008. (¶17). On January 17, 2008 A.R.N.P. Land ordered another set of x-rays to pinpoint the cause of plaintiff's problem.

Plaintiff states that Dr. Cherry has never physically examined him at any time during his incarceration, and he complains of the denial of care, substandard care and lack of personal involvement of Cherry as Chief Health Officer. (¶18 & 19). Plaintiff claims that Cherry's deliberate indifference to his medical care, even after having been placed on notice of same via the grievance procedure, amounted to an eighth amendment violation. (¶¶18-20; statement of claim ¶¶1-2). Plaintiff seeks compensatory and punitive damages for the delay in his medical care.

<u>Grievance History[2] and litigation timeline</u>

Generally, the Florida Department of Corrections ("FDOC") provides a three-level administrative grievance procedure for prisoner complaints. This procedure

---

[2] Litigants are no longer required to attach copies of their administrative grievances to their complaint. The grievance history is taken from the attachments to the motion to dismiss and the plaintiff's response.

*Case No: 5:07cv107/RS/MD*

includes an informal grievance, a formal grievance and an appeal to the Office of the Secretary.  *See* FLA. ADMIN. CODE rr. 33-103.005 to 103.007 (2003).  For medical grievances, however, informal grievances are not required.  FLA. ADMIN. CODE r. 33-103.005(1); *see also* FLA. ADMIN. CODE r. 33-103.006(3)(e) and 33-103.006(2)(h).

On November 16, 2006, plaintiff filed an informal grievance in which he stated:

> On July 21, 2006, while at South Florida Reception Center, I saw Dr. Iglesias for my back.  She told me that I would have an Ortho consult. As of this date I still have not had my consultation with the orthopedic specialist for my back.  On October 4, 2006 I saw the Orthopedic for my foot and at this time he refused to check my back also.  My back causes me continual pain and discomfort and I would like to see an Orthopedic doctor immediately.

(Doc. 67, exh. A; doc. 70, exh. A).  The response, dated November 29, 2006 indicated that "Grievances pertaining to MEDICAL ISSUES must be submitted on DC1-303 form per Chapter 33-103.  You may re-submit your grievance in accordance with procedure."  (*Id.*)

> On December 5, 2006, plaintiff filed an institutional grievance stating: On July 21, 2006 while at SFRC I saw Dr. Iglesias for my back.  She told me that she was putting me in for an Ortho consult.  As of this date I still have not had this consultation with the orthopedic specialist for my back.  On October 4, 2006 I saw the Orthopedic for my foot and at this time he refused to check my back also.  My back causes me continual pain and discomfort and I would like to see an Orthopedic Dr. for this as soon as possible.

(Doc. 67, exh. B; doc. 70, exh. B).  The response to plaintiff's grievance was as follows:

> Your request for administrative Remedy or Appeal has been reviewed and evaluated. Your chart will be referred to the A.R.N.P. to see if there is a need for an ortho consult.
>
> Grievance Approved.
>
> Should you feel your grievance has not been satisfactorily resolved at the institutional level, you may submit an appeal to the Office of the Secretary, Bureau of Inmate Grievances, 2601 Blairstone Road, Tallahassee, FL 23299-2500 within 15 calendar days of this institutional response using the Request for Administrative Remedy or Appeal Form.

(Doc. 67, exh. C; doc. 70, exh. B).

On December 27, 2006, plaintiff submitted a grievance appeal to the Office of the Secretary and again claimed that he had not yet been seen by an Orthopedic Doctor. (Doc. 67, exh. D & G).

On January 11, 2007, defendant Dr. Cherry was transferred to Apalachee CI to serve as the Chief Health Officer at that institution. (Doc. 67, exh. E).

On March 13, 2007, the Office of the Secretary responded to plaintiff's grievance appeal as follows:

> Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.
>
> In addition, the institution was contacted and they provided this officer with information regarding the issues you presented. It is the responsibility of your Chief Health Officer to determine the appropriate treatment regimen for the condition you are experiencing.
>
> Specialty consults are ordered by your Chief Health Officer when in his judgment a medical need is presented.
>
> Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

(Doc. 67, exh. F & G, doc. 70, exh. D).

Plaintiff's initial complaint was filed on May 7, 2007 pursuant to the prison mailbox rule,[3] and docketed on May 17, 2007. (Doc. 1). He filed his first amended complaint on June 12, 2007 (doc. 8) and a second amended complaint on August 2, 2007 (doc. 10). On August 13, 2007, this court issued a recommendation that the complaint be dismissed for failure to state a claim, and the recommendation was adopted by the district court on August 30, 2007. (Doc. 13). Plaintiff appealed.

On June 10, 2008, plaintiff filed an institutional grievance alleging that two orders had been written for a neurology consultation but that he had not yet been

---

[3]*Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule"); *Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001) (absent evidence to the contrary, court assumes that a pro se petition is delivered to prison authorities for mailing the date it was signed); *Adams v. United States,* 173 F.3d 1339 (11th Cir. 1999).

*Case No: 5:07cv107/RS/MD*

scheduled for consults.  Plaintiff stated in the grievance that he hoped by bringing it to the attention of staff that completion of the consults would be facilitated.  (Doc. 67, exh. H, doc. 70, exh. E).  Defendant Cherry responded on June 26:

> Your request for Administrative Remedy or Appeal has been reviewed and evaluated.  You do not need a neurology referral for this problem since the orthopedist has evaluated you.  Orthopedic Specialist is an appropriate consultant for back pain.
>
> Grievance Denied.

(Doc. 67, exh. I).  Plaintiff was also advised of his appellate rights.

Plaintiff appealed on July 1, 2008, alleging that he was referred to both a neurologist and an Orthopedic Specialist and had not yet been seen by either physician.  He indicated that on January 16, 2007, he was told that he would see a specialist but that Dr. Cherry denied the consultation request.  (Doc. 67, exh. J, doc. 70, exh. F).  On July 22, 2008 he was provided with the following response to his appeal:

> Your request for administrative remedy was received at this office and it was carefully evaluated.  Records available to this office were also reviewed.
>
> It is determined that the response made to you by Dr. Cherry on 6/26/2008 appropriately addressed the issues you presented.
>
> It is the responsibility of your chief health officer to determine the appropriate treatment regimen for the condition you are experiencing.
>
> Specialty consults are ordered by your chief health officer when in his/her judgment a medical need is presented.
>
> Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

(Doc. 67, exh. K; doc, 70., exh. F).

On August 21, 2008, the Eleventh Circuit affirmed this court's dismissal of plaintiff claims against three other defendants for failure to state a claim but found that the plaintiff's allegations against Dr. Cherry should not have been dismissed for failure to state a claim.  (Doc. 49).  The court directed plaintiff to file a third amended

**complaint, and on October 28, 2008 the plaintiff did so, naming Dr. Daniel P. Cherry as the lone defendant, as instructed.**

## DISCUSSION

<u>Exhaustion of Administrative Remedies</u>

Title 42 U.S.C. § 1997e provides in relevant part:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a  prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).[4]  Exhaustion of all available administrative remedies is mandatory, and is a <u>pre-condition</u> to suit.  *Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *see also Porter v. Nussle*,  534 U.S. 516, 524-25, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000); *Poole v. Rich*, 2008 WL 185527, (11th Cir. 2008) (citing *Higginbottom*).  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether

---

[4]The purpose of this exhaustion requirement is to reduce the quantity and improve the quality of prisoner suits.  *Porter v. Nussle*,  534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).  In *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998), the Eleventh Circuit noted the following seven policy reasons favoring exhaustion:

   (1)   to avoid premature interruption of the administrative process;
   (2)   to let the agency develop the necessary factual background upon which decisions should be based;
   (3)   to permit the agency to exercise its discretion or apply its expertise;
   (4)   to improve the efficiency of the administrative process;
   (5)   to conserve scarce judicial resources;
   (6)   to give the agency a chance to discover and correct its own errors; and
   (7)   to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

*Id.* at 1327 (quoting *Kobleur v. Group Hospitalization and Med. Servs., Inc.*, 954 F.2d 705, 712 (11th Cir. 1992)).

*Case No: 5:07cv107/RS/MD*

they allege excessive force or some other wrong.  *Porter v. Nussle*,  534 U.S. at 524, 122 S.Ct. 983.  Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both.  *Booth, supra* at 734, 121 S.Ct. at 1825.  The requirement is not subject to either waiver by a court or futility or inadequacy exceptions.  *See Booth, supra* at 741 n. 6; *McCarthy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required."); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998).  Moreover, as the United States Supreme Court recently held, the PLRA requires "proper exhaustion," so that the agency addresses the issues on the merits.  *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2387-88, 165 L.Ed.2d 368 (2006); *see also* 126 S.Ct. at 2388 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.").  The exhaustion requirement is not satisfied by the prisoner filing an untimely or otherwise procedurally defective administrative grievance or appeal.  *Id.,* 126 S.Ct. at 2378.

## Analysis

Defendant asserts that plaintiff failed to exhaust his administrative remedies against Dr. Cherry prior to filing this case on May 17, 2007.[5]  The record clearly reflects that plaintiff filed only three grievances before May 17, 2007, each of which related to medical care provided to the plaintiff before Dr. Cherry's January 12, 2007 assignment as Chief Health Officer at Apalachee CI. (Doc. 70, exh. A-E).  The grievances address alleged deficiencies in the medical care provided from July of 2006 through the submission date of the request and grievances: November 29, 2006, December 5, 2006, and December 27, 2006, respectively.  (Doc. 70, exh. A, B & D).  Defendant Cherry clearly cannot be held accountable in his individual capacity for acts or omissions that occurred prior to his transfer to Apalachee CI.   Plaintiff

---

[5]Using the prison mailbox rule or the docket date of plaintiff's complaint does not change the court's analysis.

*Case No: 5:07cv107/RS/MD*

did not file an institutional appeal with respect to alleged deficiencies in defendant Cherry's medical care responsibilities until June of 2008, over a year after his initial complaint was filed. While it is true that the amended complaint at issue here was not filed until October 28, 2008 (doc. 56), dismissal is still warranted.  The statute and the case law cited above are unequivocal.  Dismissal is warranted for a failure to exhaust administrative remedies prior to filing suit, even if exhaustion occurs at some point during the litigation process. See *Booth v. Churner, supra; Johnson v. Jones,* 340 F.3d 624, 627 (8th Cir. 2003) ("court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred" and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory"); *Jackson v. District of Columbia*, 254 F.3d 262, 268-69 (D.C.Cir.2001) (rejecting argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999) ("The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.")); *Perez v. Wisconsin Department of Corrections,* 182 F.3d 532, 535 (7th Cir. 1999) (remanding for dismissal and reversing the district court's refusal to dismiss when, at the time the district court was ruling on the motion to dismiss, the inmate had fully exhausted his administrative remedies but had not done so at the time of filing; "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) (affirming dismissal of inmate's complaint who was in the process of exhausting his administrative remedies); *Neal v. Goord,* 267 F.3d 116, 121-22 (2nd Cir. 2001) (affirming dismissal of inmate's complaint because he failed to exhaust his administrative remedies on each of his claims, although some were exhausted during the pendency of his litigation); *McDaniel v. Crosby*, 194 Fed.Appx. 610, 613 (11th Cir. 2006) (plaintiff may not rely on grievances and appeals he submitted after filing his initial complaint to support his claim that he exhausted administrative

remedies, as exhaustion is a precondition to suit).    Defendant's motion must therefore be granted.

According, it is respectfully RECOMMENDED:

That defendant's motion to dismiss (doc. 67) be granted and this case be dismissed without prejudice.

At Pensacola, Florida this 25th day of March, 2009.


/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts***, 858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 5:07cv107/RS/MD*